[Civ. No. 5839.   First Appellate District, Division One.—April 22, 1927.]

# M. C. THRELKELD COMMISSARY (a Copartnership) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — EMPLOYEE INJURED WHILE RETURNING FROM ERRAND — SCOPE OF EMPLOYMENT—FINDING—EVIDENCE. — In a proceeding to obtain compensation for an injury received by an assistant cook attached to a commissary car crew on his return from an errand to procure kitchen laundry, the evidence supported the conclusion of the Industrial Accident Commission that said injury occurred in the course of and arose out of said assistant cook's employment, where he was directed by the head cook, who had been given authority by the employer to hire and direct the services of the crew, to fetch the laundry in question.

[2] ID.—PURPOSE OF ERRAND.—In such proceeding, the sole purpose of the injured employee's trip having been to procure articles to be used in the operation of the business of his employer, it was immaterial whether those articles consisted of kitchen laundry which the employees furnished or articles supplied by the employer.

[3] ID.—DUTIES OF INJURED EMPLOYEE—EVIDENCE.—In such proceeding, the contention that in complying with the instructions of the head cook to go and procure the laundry the injured employee was not acting within the scope of his employment cannot be sustained where the evidence showed that the injured employee had no regular hours of labor, that there was no definite character of work which he was obliged to perform, and that he was at all times subject to the head cook's orders.

[4] ID. — COMPLYING WITH ORDERS OF SUPERIOR — SCOPE OF EMPLOYMENT—COMPENSABLE INJURY.—In such proceeding, even granting that the task of going for the laundry was not strictly within the injured employee's duties as assistant cook, such fact alone would not excuse the employer from compensating the injury, for when an employee is injured in performing work outside the scope of his usual duties, the injury may yet be considered as

1.   See 27 Cal. Jur. 574.
2.   See 27 Cal. Jur. 359.
3.   See 28 R. C. L. 797.

arising out of and in the course of his employment if he was expressly ordered to do the work by someone authorized to direct him.

---

(1) Workmen's Compensation Acts, **C. J.**, p. 115, n. 37. (2) Workmen's Compensation Acts, **C. J.**, p. 80, n. 25. (3) Workmen's Compensation Acts, **C. J.**, p. 81, n. 36. (4) Workmen's Compensation Acts, **C. J.**, p. 83, n. 49.

PROCEEDING in Certiorari to annul an award of compensation made by the Industrial Accident Commission to an injured employee. Award affirmed.

The facts are stated in the opinion of the court.

Redman & Alexander and R. P. Wisecarver for Petitioners.

G. C. Faulkner for Respondents.

KNIGHT, J.—Petitioners seek by this proceeding in *certiorari* to have annulled an award made by the Industrial Accident Commission in favor of respondent Ong Thlu Lem, known also and referred to in the record as Kee Ong, who suffered injuries on May 29, 1926, which resulted in the amputation of his right arm at the shoulder.

The Industrial Accident Commission found that the injury occurred in the course of and arose out of Kee Ong's employment (sec. 6 (a), Workmen's Compensation Act [Stats. 1923, p. 375]), and the question presented by this proceeding is whether such finding is supported by substantial evidence. Petitioners contend that it is not, claiming that Kee Ong was injured while on a personal errand for the benefit of himself and another employee.

The record discloses the following facts: The injured man had been employed for about six months as assistant cook on a commissary car located on a siding at a construction camp named Norden on the lines of the Southern Pacific Company, which car was being operated by M. C. Threlkeld Commissary, a copartnership, as a ''short-order'' boarding-house for the accommodation of the men employed by said railroad company in its maintenance of way and construction department. Sam Dong, as head cook, was in full charge of the crew of

---

4. See 27 Cal. Jur. 357.

82 Cal. App.—31

said commissary car, having absolute power to "hire or fire" any member thereof and being given unrestricted authority to direct their services. He had hired Kee Ong, whose entire time and services were subject to Sam Dong's orders. The hours of labor were irregular, the work being assigned by Sam Dong as the volume of business demanded. The wages of the men employed on said car were paid by said co-partnership. As was customary in such employment, the members of the cook's crew wore aprons while performing their work, which were supplied by the crew and were laundered apparently at the expense of the head cook. Kee Ong had worked through the night preceding the accident, and when Sam Dong came on relief duty in the morning he found there were no clean aprons to wear, whereupon he directed Kee Ong to go down to the express office at Soda Springs, a station about a mile away, to fetch the kitchen laundry which Sam Dong had sent to a Chinese laundry in Sacramento to be washed, and telling Kee Ong that when he returned he could go to sleep. In order to reach Soda Springs from the car it was necessary for pedestrians to follow the railroad right of way. Complying with Sam Dong's orders, and accompanied by another Chinese employee, Kee Ong started immediately, before eating his breakfast, and walked along the railroad track to Soda Springs, but upon reaching there ascertained that the laundry was not there. Kee Ong and his companion then started on their return to the car, and after proceeding some distance along the track were overtaken by a freight train traveling in the same direction. They stepped to one side of the track, but after the engine and several cars had passed them, started forward, walking along the side of the track, when Kee Ong, who was behind his companion, stumbled and fell in such a manner that his right arm fell across the rail and under the wheels of the moving train, with the result that his arm was crushed, necessitating amputation at the shoulder.

[1] We are of the opinion that the foregoing evidence supports the Commission's conclusion that said injury occurred in the course of and arose out of Kee Ong's employment, and therefore its findings must be sustained. As said in *Dearborn* v. *Industrial Acc. Com.*, 187 Cal. 591 [203 Pac. 112], "At the outset of this inquiry we may repeat what was said by the present chief justice in *Southern Pacific Co.*

v. *Industrial Acc. Com.*, 177 Cal. 378, 380 [170 Pac. 822]: 'This court, in reviewing awards of the commission, is not acting as a court of appeal. It has no power to weigh the effect of positive evidence. It must assume that the commission believed all the evidence given which tends to sustain the award made. . . . Section 84 (sec. 67 of the present act) of the Workmen's Compensation Act, which gives us the power we are now exercising over this award of the commission, authorizes us to annul an award only when the commission acted without or beyond its powers, or when the award was procured by fraud, or is unreasonable, or when the findings of fact do not support it. The findings are not subject to review except in so far as they may have been made without any evidence whatever in support thereof. The review of the findings, even in such cases, is not based on the theory that they are not supported by the evidence, and that we are weighing evidence to determine that proposition, but upon the theory that the commission has no jurisdiction to make a finding where there is no evidence to support it.' "

[2] Petitioners contend that because Kee Ong was sent to bring back a package of laundry containing articles of apparel which the employees themselves furnished in their employment, Kee Ong was on a personal errand, and consequently was not performing any service for his employer. We find no merit in the point. The sole purpose of his trip to Soda Springs was to procure articles to be used in the operation of the business of his employer, and that being so it would seem to be immaterial whether those articles consisted of kitchen laundry which the employees furnished or articles supplied by the employer, such as a carving knife which might have been left at Soda Springs to be sharpened or some kitchen utensils sent there to be mended. Petitioners appear to have assumed that the package also contained personal articles of apparel belonging to Sam Dong, but we think this assumption is not borne out by a fair construction of the evidence. Although Sam Dong, in reply to one question, did say that the package of laundry contained "apron and my other clothes," he doubtless meant by the latter phrase his other kitchen clothes, because later on he testified clearly that the laundry consisted of "all kitchen material" and Kee

Ong also testified that the package contained "kitchen laundry." If the laundry had consisted entirely of articles of common wearing apparel not particularly identified with a cook's employment, or if Kee Ong had been sent on an errand to obtain a supply of tobacco or other merchandise for the personal use of the cook's crew which had no connection with the operation of the commissary car, a different case would be presented. But the undisputed evidence here shows that the only purpose in sending Kee Ong to Soda Springs was because when Sam Dong came on duty that morning he found there were no clean aprons to wear in carrying on the work. If clean aprons had been available that morning, Kee Ong doubtless would not have been required to make the trip.

[3] Petitioners further contend that Kee Ong's duties required his presence only in and around the commissary car; that when Sam Dong arrived at the car on the morning of the accident Kee Ong was relieved from further duty for the day and was then on his own time; that consequently it cannot be said that in complying with Sam Dong's instructions to go to Soda Springs for the laundry Kee Ong was acting within the scope of his employment. The evidence before the Commission proved, however, that Kee Ong had no regular hours of labor, nor was there any definite character of work which he was obliged to perform. He was at all times subject to Sam Dong's orders. This point was made clear by the sworn statement of one of the employers to the effect that Kee Ong took his orders directly from Sam Dong, and that if Sam Dong sent Kee Ong to Soda Springs it was his duty to go. The testimony of both Sam Dong and Kee Ong was substantially to the same effect.

[4] Even granting that the task of going for the laundry was not strictly within Kee Ong's duties as assistant cook, such fact alone would not excuse the employer from compensating the injury, for it has been held that when an employee is injured in performing work outside the scope of his usual duties, the injury may yet be considered as arising out of and in the course of his employment if he was expressly ordered to do the work by someone authorized to direct him. (*Engels C. Min. Co.* v. *Industrial Acc. Com.,* 183 Cal. 714 [11 A. L. R. 785, 192 Pac. 845]; *Burian* v. *Los*

*Angeles Cafe Co.,* 173 Cal. 625 [161 Pac. 4]; *Oakland* **v.** *Industrial Acc. Com.,* 35 Cal. App. 484 [170 Pac. 430].)

We do not deem it necessary to differentiate the facts of this case from those of the numerous ones cited by petitioners. The legal principles stated in those cases are well settled, but the facts upon which they are grounded are materially different from those of the one before us, as respondents have pointed out in their briefs, and for that reason those principles are not applicable here.

The award is affirmed.

.Tyler, P. J., and Cashin, J., concurred.