[S. F. No. 12794. In Bank.—June 26, 1928.]

PACIFIC INDEMNITY COMPANY, a Corporation, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, etc., and MRS. MINNIE JAYNES, Respondents.

Cooley, Crowley & Gallagher, for Petitioner.

G. C. Faulkner for Respondents.

CURTIS, J.—This is a proceeding to review an award of the Industrial Accident Commission in favor of Mrs. Minnie Jaynes, the mother of John Jaynes, who met his death while in the employ of the Page Modern Garage. The petitioner was the insurance carrier of the employer. The award was based upon the finding of the Commission that said John Jaynes left surviving him his mother, who was wholly de-

pendent upon him. The amount of the award, aside from burial expense, was $4,446, payable $5.29 forthwith and the further sum of $18.52 per week, beginning September 8, 1927, and continuing until the whole of the award shall have been paid. It is further provided in the award that all payments shall bear interest from the date of the award until paid, or until the date at which payments become due.

Petitioner attacks the award upon three grounds. First, that there is no evidence to justify the finding of the Commission that the applicant, Mrs. Minnie Jaynes, was wholly dependent for her support upon the deceased. Second, insufficiency of the findings to support the award. Third, that the Commission exceeded its jurisdiction in allowing interest upon the deferred payments.

■ First. In support of its claim that there is no evidence to support the finding of the Commission that Mrs. Jaynes was totally dependent upon the earnings of her deceased son, petitioner relies upon certain evidence to the effect that Mrs. Jaynes was, at the time her said son was injured, receiving support from another of her sons, who was residing with her at said time, and also upon certain evidence that she was receiving compensation as manager of the apartment house in which she and her two sons were residing as tenants. The household of Mrs. Jaynes at the time of her son's injury consisted of herself and her two sons, John, aged 27 years, and Herman, aged 22 years. The evidence shows that John was at the time he received the injury which caused his death receiving in wage five dollars per day, and that he worked six days a week. After taking out a few dollars each week for personal expenses he turned the balance of his wages over to his mother for the support of the family household. The amount thus paid his mother is shown by the evidence to be approximately $25 per week. The other son, Herman, had been out of employment since May 7, 1927, and only secured a position on August 14, 1927. The date upon which John Jaynes received his fatal injury was September 3, 1927. He died two days later. Herman Jaynes testified that he had contributed nothing to his mother's support during the time he was out of employment, which was from May 7th to August 14, 1927, and that since securing employment, on account of a number of unsettled accounts owing to other persons,

he had not contributed anything toward his mother's support. As to the amount contributed by Herman before losing his position in May, 1927, the evidence shows that he paid to his mother only about $6 per week, which amount would not more than pay for his own board and room. We think the Commission was justified in concluding that Herman was not at the time his brother John was injured contributing anything to his mother's support.

As to petitioner's contention that Mrs. Jaynes was receiving compensation as manager of the apartment house in which she and her sons resided, there is but little if any evidence to support such a claim. The evidence shows that the apartment house had recently changed hands, and that Mrs. Jaynes was showing people the rooms therein for the new proprietor until he could get somebody to manage the place for him, for which services she was allowed a "little." The evidence does not show the exact amount. The Commission undoubtedly considered this amount inconsequential, and the duration of such employment but temporary. Under such conditions, it was justified in disregarding the amount so received in determining the question of the total dependency of Mrs. Jaynes. (*Peterson* v. *Industrial Acc. Com.*, 188 Cal. 15 [204 Pac. 390].)

Petitioner further claims that Mrs. Jaynes testified that the family expenses amounted to $132 to $146 per month, and that she only received $25 per week from her son John. From this evidence petitioner contends that it conclusively appears that she was not totally dependent upon her son John for support. In the first place, these items of expense were only given approximately by her. In the second place, they include the support of her son Herman. If we deduct from the total amount of the household expenses as given by her the reasonable cost of board and room rent for Herman, the difference is not far from the amount contributed by John during his lifetime toward the support of the household. There is no merit, we think, in this contention of petitioner.

Second. Petitioner contends that there is no finding by the Commission as to the average annual earnings of the deceased, and that without such a finding the award cannot be sustained. Finding 3 of the Commission is as follows: "The employee left surviving him, and wholly dependent

upon him, Minnie Jaynes, his mother, who is entitled to a death benefit of $4,446.00, payable at the rate of $18.52 per week, together with an award for $150 burial expense payable direct to Barry & McDonnell, and that said burial expense has been paid by the insurance carrier. *The payments herein mentioned are based upon earning of $5.00 a day for employment six days a week.* Amount accrued to and including September 7, 1927, (2/7 week) is the sum of $5.29.'' By the italicized portion of this finding shown above the Commission evidently intended to fix the average weekly earnings of the deceased. While the finding is not clear or as explicit as it might be, yet we think it is sufficient for the purpose intended. Having found the average weekly earnings of the deceased, it was simply a matter of computation under the provisions of the ''Workmen's Compensation Insurance and Safety Act'' to ascertain his average annual earnings. The basic fact, therefore, for determination by the Commission was the average weekly earnings of the deceased, and, having found that fact, the Commission could and did compute the amount of the award based upon said average weekly earnings.

Petitioner contends that there was no evidence to support the finding of the Commission as to the average weekly earnings of the deceased. It is true that there is no evidence that deceased worked in the same employment as that followed by him at the time of his injury for the period of 260 days, as provided by section 12 (a) (1) of said act, but it was stipulated by the parties to the proceeding before the Commission that the average earnings of the deceased were five dollars per day, working six days per week. This stipulation, we think, was sufficient to support the finding of the Commission as to the average weekly earnings of the deceased.

Third. That portion of the award allowing interest on the unpaid portions of the award is without the authority of the Commission. (*Pacific Indemnity Co.* v. *Industrial Acc. Com.,* 202 Cal. 521 [261 Pac. 987].) It should, therefore, be annulled.

The award, excepting that portion thereof calling for interest, is affirmed. The order providing for payments of interest on the award is annulled.

Shenk, J., Richards, J., Tyler, J., *pro tem.,* Seawell, J., Preston, J., and Waste, C. J., concurred.